## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JANE DOE, a minor, by her parents and next friends, JOHN DOE and JILL DOE,<br><br>Plaintiff,<br><br>v.<br><br>ELKHORN AREA SCHOOL DISTRICT; JASON TADLOCK, in his individual capacity; and RYAN MCBURNEY, in his individual capacity,<br><br>Defendants. | Civ. Action No. 2:24-cv-00356<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Jane Doe, a minor, by her parents and next friends, John Doe and Jill Doe, brings this civil rights action against Defendants Elkhorn Area School District ("EASD"), EASD Superintendent Jason Tadlock, in his individual capacity, and Elkhorn Area Middle School ("EAMS") Principal Ryan McBurney, in his individual capacity, for adopting, maintaining, and enforcing policies, procedures, and customs that unlawfully deny Jane and at least 21 other transgender EASD students their well-established civil rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to be treated consistently with their gender identity at school.

### NATURE OF THE CASE

1.     Plaintiff Jane Doe ("Jane") is a student at Elkhorn Area Middle School ("EAMS"), a public middle school in the Elkhorn Area School District ("EASD") in Elkhorn, Wisconsin. She brings this action by and through her parents and next friends, John Doe ("Mr. Doe") and Jill Doe ("Mrs. Doe").

2.      Jane is a girl. Jane is also transgender.

3.      In November 2022, Jane told a teacher that she is transgender and that she wished to use her chosen name, Jane, and female pronouns, at school. As required by EASD policy, the teacher immediately notified Jane's guidance counselor of Jane's disclosure of her gender identity and her request to use her chosen name at school. In turn, as required by EASD policy, the guidance counselor summoned Jane to a meeting where he told her that, before the school could honor her requests, she would need a "Gender Support Plan" and that her parents would be notified. The counselor then called Mrs. Doe, told her that Jane had come out as transgender, and asked that she and Mr. Doe come to the school to meet with him to discuss Jane's Gender Support Plan.

4.      The Does went to EAMS to meet with the guidance counselor that same day. At the meeting, the counselor walked through EASD's template Gender Support Plan, a document that EASD requires of all transgender students before their gender identity will be respected at school. The template plan covers various topics, including the student's chosen name and pronouns, measures to protect the student's privacy and safety, and the student's use of sex-specific facilities at school, among others. The counselor had already completed some sections of the form based on his previous meeting with Jane and engaged in a dialogue with the family on their preferences in completing most sections of Jane's plan.

5.      When it came to Jane's use of sex-specific school facilities, however, there was no dialogue. The guidance counselor—following EASD's then-unwritten policy that categorically denies *all* transgender students at EASD access to restrooms corresponding to their gender identity—unilaterally decided that Jane would only be permitted to use faculty restrooms at EAMS instead of the girls' restrooms and locker rooms that non-transgender girls can use. Neither Jane nor her parents were given the option that she be able to use girls' restrooms and locker rooms like

other girls. At the time, Mr. and Mrs. Doe were unaware that Jane could use girls' facilities at school and did not object to this directive.

6.     Jane, however, became deeply uncomfortable with being forced to use faculty restrooms when every other girl could use girls' facilities at school. The faculty restrooms were further away from her classes than the girls' restrooms, called unwanted attention to her when she used them, and caused her to miss class time for her sixth-grade physical education class since she needed to arrive late and leave early from class so she could change her clothes in the faculty restroom. Occasionally, out of a desire to fit in with her female classmates and to avoid unwanted attention, Jane used girls' restrooms at EAMS. Teachers and administrators repeatedly reprimanded her for using girls' restrooms and threatened her with further discipline if she continued to do so.

7.     By the time Jane first came out as transgender at school in late 2022, Defendants were fully aware that denying transgender students access to sex-specific restrooms matching their gender identity was unlawful. Five years earlier, in 2017, the U.S. Court of Appeals for the Seventh Circuit (the federal appeals court for Wisconsin, Illinois, and Indiana) unambiguously held in *Whitaker v. Kenosha Unified School District No. 1 Board of Education*, that "[a] policy that requires an individual to use a bathroom that does not conform with his or her gender identity punishes that individual for his or her gender non-conformance, which in turn violates Title IX," and also deprives transgender students equal protection of the laws in violation of the Fourteenth Amendment, 858 F.3d 1034, 1049-50, 1051-54 (7th Cir. 2017). *Whitaker* has since been reaffirmed by the Seventh Circuit in *A.C. v. Metropolitan School District of Martinsville*, 75 F.4th 760 (7th Cir. 2023), *cert. denied*, 92 U.S.L.W. 3174 (U.S. Jan. 16, 2024) (No. 23-392).

8.     Although EASD's written policies and procedures have long recognized that denying transgender students access to sex-specific school facilities aligned with their gender identity violates federal law, EASD has, in practice, consistently followed a discriminatory, unwritten policy in which all transgender students are required to use separate, gender-neutral facilities or sex-specific facilities corresponding to their assigned sex.

9.     In the summer of 2023, in response to vocal community opposition to transgender students' rights, EASD's Superintendent of Schools, Defendant Jason Tadlock, "clarified" EASD's transgender student policies at the July 24, 2023, public meeting of the Elkhorn Area Board of Education (the "Board"). At that meeting, Defendant Tadlock assured the Board and a large crowd of community members, that EASD had not allowed—and would not allow—*any* transgender student to use sex-specific restrooms matching their gender identity. Defendant Tadlock emphasized that "no student currently has usage of the restroom or locker room with which gender they identify as part of their current support plans," that all 22 transgender students with Gender Support Plans at EASD are using either single-occupancy restrooms or "restrooms aligned with their biological sex," and that "no student will ever be required . . . to use a restroom or use a locker room with someone of the opposite biological sex."

10.     Several weeks later, a week before Jane was to return to EAMS for seventh grade, Mr. Doe formally requested that Jane be permitted to use girls' restrooms at school in the new school year. Defendant Tadlock and Defendant Ryan McBurney, the EAMS Principal, summarily denied this request, explicitly referencing the vocal community opposition to transgender students' rights directed at EASD that summer. Even when Mr. Doe explained that EASD's continued refusal to allow Jane to use girls' restrooms would violate her civil rights under Title IX and the Fourteenth Amendment, Defendants Tadlock and McBurney refused to back down. They only

agreed to permit Jane to use several additional single-occupancy restrooms at EAMS, in addition to the faculty restrooms she was already allowed to use.

11. By excluding Jane from girls' restrooms—and by adopting and enforcing policies, practices, procedures, and customs that categorically deny Jane and all other transgender students access to sex-specific facilities matching their gender identity—Defendants have violated, and continue to violate, their obligations under Title IX and the Equal Protection Clause.

12. Through this action, Jane seeks a declaratory judgment that EASD's policy or practice of denying Jane and other transgender students access to restrooms corresponding to their gender identity violates Title IX and the Equal Protection Clause; preliminary and permanent injunctions barring Defendants from enforcing these policies against Jane and other transgender students; compensatory and punitive damages; and her reasonable attorneys' fees and costs.

## PARTIES

13. Plaintiff Jane Doe is a 13-year-old girl. She resides in Elkhorn, Wisconsin. Plaintiff brings this action through her parents and next friends, John Doe and Jill Doe.

14. Defendant Elkhorn Area School District ("EASD") is a public school district in Elkhorn, Walworth County, Wisconsin. EASD's main office is located at 3 North Jackson Street, Elkhorn, Wisconsin 53121. EASD is a common school district that, pursuant to the Wisconsin Constitution and state statutes, operates under the direction of the Elkhorn Area Board of Education (the "Board"), a seven-member elected school board. The Board designates responsibility for the administration of EASD to the Superintendent of Schools, currently Defendant Jason Tadlock. EASD serves approximately 3,500 students in preschool ("4K") through 12th grade who reside in eight different municipalities in Walworth County. EASD operates three 4K centers, three elementary schools, one middle school, one high school, one virtual charter school serving grades

4K through 12, and one college and career academy. EASD is a recipient of Federal funds and is therefore subject to Title IX.

15.     Defendant Jason Tadlock is EASD's Superintendent of Schools and is sued in his individual capacity. At all times relevant to this Complaint, Defendant Tadlock has acted, and continues to act, under color of law. In his individual capacity, he has caused or failed to intervene against the discriminatory policies, practices, customs, and deprivations described in this Complaint.

16.     Defendant Ryan McBurney is the Principal of EAMS and is sued in his individual capacity. At all times relevant to this Complaint, Defendant McBurney has acted, and continues to act, under color of law. In his individual capacity, he caused or failed to intervene against the discriminatory policies, practices, customs, and deprivations described in this Complaint.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343(a)(3). This Court is authorized to order declaratory relief under 28 U.S.C. §§ 2201 and 2202.

18.     Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. § 1391(b) because the claims arose in the District, all parties reside in the District, and all of the events giving rise to this action occurred in the District.

## FACTS

### PLAINTIFF JANE DOE

19.     Plaintiff Jane Doe is a girl. She is 13 years old.

20.     Jane has been enrolled in EASD since the 2017-2018 school year.

21.     Jane is currently a seventh-grade student at EAMS, a public middle school in EASD serving approximately 700 students in grades six through eight.

22.     Jane expects to attend EAMS through the end of the 8th grade in the 2024-2025 school year. After that, she plans to attend Elkhorn Area High School, a public high school in EASD, for grades nine through twelve.

23.     Jane is transgender. Her gender identity is female.

24.     Jane was designated "male" on her birth certificate and was assumed to be male until 2022, but Jane knows that she is a girl.

25.     Jane has experienced gender dysphoria since the third grade.

26.     Jane came out as transgender at home and school in 2022. Since then, she has lived in accordance with her female gender identity at school and in all aspects of her life. She uses a traditionally female name, Jane, instead of her traditionally male birth name. She uses the pronouns she, her, and hers, which are pronouns typically used by women and girls. Because Jane is a girl, she wishes to be treated like every other girl at school.

27.     Jane was formally diagnosed with Gender Dysphoria in Adolescents and Adults by her treating psychotherapist in February 2024.

28.     As of July 24, 2023, Jane was one of at least 22 transgender students enrolled in EASD schools. She is one of six transgender students enrolled at EAMS this school year.

### SINCE 2016, EASD'S WRITTEN POLICIES AND PROCEDURES HAVE REFLECTED THE SCHOOL DISTRICT'S AWARENESS OF TRANSGENDER STUDENTS' RIGHTS TO USE SEX-SPECIFIC RESTROOMS MATCHING THEIR GENDER IDENTITY.

29.     In October 2016, EASD adopted policies and procedures pertaining to the rights of transgender and gender nonconforming students. These policies and procedures were set forth in two documents: *Procedures for Nondiscrimination and Protection of Transgender or Gender Nonconforming Students* ("Nondiscrimination Procedures") and *Gender Support Protocols and Document Assistance* ("Gender Support Protocols").

30.    EASD has amended the Nondiscrimination Procedures document several times since 2016, including in April 2021 in response to a request by the School Board. Elkhorn Area Sch. Dist., *Procedures for Nondiscrimination and Protection of Transgender or Gender Nonconforming Students* (revised Apr. 2021) ("Nondiscrimination Procedures (2021)").

31.    As described in the Nondiscrimination Procedures (2021) document, the document "was created to provide information about how to best ensure the protection for students and staff in terms of gender inclusion" and "is based on best practices and will be updated as we continue to receive guidance from the courts and other government agencies."

32.    The Nondiscrimination Procedures document lists "Student Rights at School for Those Who Are Transgender and Gender Non-Conforming." The rights enumerated on this list include "the right to be treated according to your gender identity," "the right to use restrooms and locker rooms that match your gender identity, and . . . [to not] be forced to use separate facilities," and "the right to protect your privacy and choose who you tell or don't tell about being transgender." The document includes a template Gender Support Plan addressing various aspects of a student's gender transition at school; a document entitled, "Gender Support Plan: Document Assistance," intended "to create shared understandings about the ways in which the student's authentic gender will be accounted for and supported at school;" and a description of the types of professional development opportunities EASD intended to provide to its staff regarding the rights of transgender and gender nonconforming students.

33.    EASD's Gender Support Protocols were developed in October 2016 and revised several times since, including in September 2021, Elkhorn Area Sch. Dist., *Gender Support Protocols and Document Assistance* (revised Sept. 2021) ("Gender Support Protocols (2021)"), and most recently in October 2023, Elkhorn Area Sch. Dist., *Gender Support Protocols and*

*Document Assistance* (revised Oct. 2023) ("Gender Support Protocols (2023)"). The document addresses various issues regarding the treatment of transgender students, including the use of sex-specific school restrooms and locker rooms.

34. EASD's Gender Support Protocols were created by Defendant Tadlock in cooperation with EASD's pupil services office and Boardman & Clark, a law firm.

35. Prior to the October 2023 revision, the Gender Support Protocols document expressly recognized that imposing restrictions on transgender students' use of sex-specific restrooms and locker rooms corresponding to their gender identity was prohibited by EASD policy and "may be a violation of Title IX." Gender Support Protocols (2021) at 5. The September 2021 revision provided the following instructions to EASD personnel who participate in formulating a Gender Support Plan for a transgender student:

> **District Facility Use:**
> As we complete the gender support plan, we should *always* ask the student their preference for locker room and bathroom use and not assume they want to use the facilities consistent with their gender preference or sex. We also have to be careful not to put *any* restrictions on the use of the facilities. While the District *cannot require a transgender student to use gender-neutral facilities* when possible the District should have a gender-neutral location that can be used by anyone. *Please note that refusing to allow a student access to and use of facilities consistent with their gender identity may be a violation of Title IX.*"

*Id*. (emphases added).

36. An in-service training provided by EASD to school district personnel on December 6, 2021, entitled "Gender Support Plan Introduction," (the "December 2021 In-Service Training") reiterated the statements contained in the 2021 revisions of the Nondiscrimination Procedures and Gender Support Protocols. Specifically, the December 2021 In-Service Training stated that a transgender student's rights at school include the "[r]ight to be treated according to your gender

9

identity" and the "[r]ight to use restrooms and locker rooms that match your gender identity, and you can't be forced to use separate facilities."

37.     Under EASD's Gender Support Protocols, any time a transgender student tells an EASD staff member that they are transgender and wish to have their gender identity respected at school, that staff member must immediately inform the student's guidance counselor. The counselor must then create a Gender Support Plan for the student, with notice to and involvement of the student's parents. The Gender Support Plan addresses various topics, including which restrooms and locker rooms the student may use at school and on school trips. Under EASD policy and practice, a transgender student is prohibited from using any restrooms not authorized on that student's Gender Support Plan.

38.     Cisgender students (*i.e.*, non-transgender students) do not require written authorization by EASD or their parents to use restrooms corresponding to their gender identity. While a cisgender girl may use girls' restrooms without question, EASD policy requires transgender girls to get written permission to use girls' restrooms, if they are permitted to do so at all. So too for boys. These additional, burdensome administrative hurdles to use restrooms are imposed solely on transgender students under EASD policy.

39.     EASD administrators, including Defendant Tadlock, have received trainings from the Wisconsin Association of School Boards ("WASB") and the law firm Boardman & Clark on nondiscrimination protections for transgender students.

40.     On November 19, 2020, WASB conducted a training, "Transgender Students and Staff – Legal Update and Title IX Issues" (the "2020 WASB Training"). The presentation described itself as "a product of the Wisconsin Association of School Boards, Inc. and Boardman & Clark" and "intended to provide authoritative general information, with commentary, as a service to

WASB members." The 2020 WASB Training discussed the Seventh Circuit's 2017 decision in *Whitaker*, in which the appeals court held that denying transgender students access to school restrooms corresponding to their gender identity violates Title IX and the Equal Protection Clause, and other federal cases reaching similar holdings.

41.     Upon information and belief, EASD administrators, including Defendant Tadlock, attended or viewed the 2020 WASB Training.

42.     On August 3, 2021, Boardman & Clark attorneys presented a similar training to Wisconsin school administrators entitled, "Title IX: Prohibiting Discrimination on the Basis of Sex, Sexual Orientation, and Gender Identity" (the "2021 Boardman & Clark Training"). Like the 2020 WASB Training, this training addressed the Seventh Circuit's *Whitaker* decision in detail. The training stated that *Whitaker* was decided in 2017, that "Wisconsin sits in the Seventh Circuit," and that the Seventh Circuit held in *Whitaker* that "[t]he district violated Title IX when it enforced a district policy 'requir[ing] an individual to use a bathroom that does not conform with his or her gender identity . . . ." The presentation further explained that the *Whitaker* court rejected the school district's argument that the plaintiff student had "failed to make use of readily available alternatives" and "that offering gender neutral bathroom isn't enough."

43.     The 2021 Boardman & Clark training also discussed the Supreme Court's June 2020 decision in *Bostock v. Clayton County*, in which the Court held that discrimination for being transgender violates Title VII of the Civil Rights Act of 1964. The training noted that the "Biden administration's policy is to apply the reasoning in *Bostock* to all laws and implementing regulations that prohibit sex discrimination, including Title IX."

44.     Upon information and belief, EASD administrators, including Defendant Tadlock, attended or viewed the 2021 Boardman & Clark training.

45.     Defendant Tadlock has extensive personal knowledge and training on schools' legal obligations to transgender students under Title IX and the Constitution. Defendant Tadlock has publicly stated that he has attended "probably a dozen" meetings about transgender students' rights in recent years.

**IN RESPONSE TO PUBLIC OPPOSITION TO TRANSGENDER STUDENTS' RIGHTS, EASD REVEALED THAT ITS ACTUAL POLICY IS TO DENY ALL TRANSGENDER STUDENTS ACCESS TO SEX-SPECIFIC SCHOOL FACILITIES MATCHING THEIR GENDER IDENTITY.**

***Anti-Transgender Activists Take to Social Media to Criticize EASD's Policies After Learning of a Transgender Girl's Restroom Use at EAMS***

46.     In the summer of 2023, the Wisconsin chapter of Moms for Liberty ("Wisconsin Moms for Liberty"), a group that vocally opposes transgender students' rights, publicly targeted EASD and its policies toward transgender students.

47.     On June 22, 2023, a leader of Wisconsin Moms for Liberty, Scarlett Johnson, who is not a resident of Elkhorn and is a vocal opponent of so-called "gender ideology" in schools, posted the following on the social media website X (formerly Twitter):

> In an Elkhorn, WI middle school, a biological boy(who is allegedly identifying as a girl or non-binary) routinely used the girls bathroom causing stress and anxiety to both the girls who have to just shut up and take it, but also 6th grade boys who feel helpless and confused at what is happening.

Scarlett Johnson (@scarlett4kids), X (June 22, 2023, 7:02 PM), https://twitter.com/scarlett4kids/status/1672017336038031365 [https://perma.cc/6TDM-J9WR?type=image].

***School Board Meeting on July 17, 2023***

48.     On July 17, 2023, at a regular meeting of the Board, two members of the public made statements expressing opposition to transgender students' restroom use and concerns with EASD's gender support protocols and trainings.

49.     One community member passed around copies of the December 2021 In-Service Training and EASD's Gender Support Protocols, questioning whether those documents were approved by the Board, reflected EASD policy, or were being "taught" to students.

50.     Another community member said that it "makes me sick to my stomach" that the Board lacks the "backbone" to respond to the Gender Support Protocols. He added, "How dare this administration back that up?," and warned that "there is a storm coming" and the Board should be "ready to fight that fight."

51.     In response to those statements, Defendant Tadlock stated that EASD was bound by case law and federal guidance addressing these questions.

### *Escalation of Public Criticism of EASD After July 17 Board Meeting*

52.     Public opposition to EASD's transgender student policies and trainings escalated after the July 17 School Board meeting.

53.     The next day, July 18, 2023, Scarlett Johnson, the Wisconsin Moms for Liberty activist, made a series of posts on X about EASD's December 2021 In-Service Training presentation. In the first post, she shared the training presentation slides that the community member had distributed at the School Board meeting, and wrote:

> BREAKING: ELKHORN, WI GENDER SUPPORT POLICY UPDATED IN ELEMENTARY SCHOOLS WITHOUT PARENTAL KNOWLEDGE OR INPUT…IN 2021!
> Parents only realized this after they discovered a 10 yr old biological boy was using the girls' bathroom.
> @Moms4Liberty
> @DefendingEd

Scarlett Johnson (@scarlett4kids), X (July 18, 2023, 10:26AM), https://twitter.com/scarlett4kids/status/1681309577328087041 [https://perma.cc/PD49-P2H3?type=image].

54.     In another post in that thread, Johnson described EASD's policy regarding school facility use by transgender students as "secret," writing:

> Elkhorn Secret Gender Policy:
> ELEMENTARY students have the right to "…use restrooms and locker rooms that match your gender identity, and you can't be forced to use separate facilities.

Scarlett Johnson (@scarlett4kids), X (July 18, 2023, 10:54 AM), https://twitter.com/scarlett4kids/status/1681316429172453376 [https://perma.cc/KHJ7-CFKC].

55.     That same day, a group called Parents Defending Education, which describes itself as "a national grassroots organization working to reclaim our schools from activists promoting harmful agendas," posted a piece on its website describing EASD's transgender student policies. Parents Defending Education, *Elkhorn Area School District provides teachers with training that includes "Gender Unicorn" and protocols for elementary and middle school students who identify as transgender* (July 18, 2023), https://defendinged.org/incidents/elkhorn-area-school-district-provides-teachers-with-training-that-includes-the-gender-unicorn-and-protocols-for-elementary-and-middle-school-students-who-identify-as-transgender/ [https://perma.cc/ZY3F-5A6A]. The piece included an uploaded copy of EASD's December 2021 In-Service Training presentation. Parents Defending Education posted the piece on its "IndoctriNation Map," https://defendinged.org/map/, which tracks policies in school districts across the country that the group criticizes for being LGBTQ+ friendly.

56.     Johnson then shared the Parents Defending Education piece on X, writing:

> Elkhorn Area School District provides teachers with training that includes the "Gender Unicorn" and protocols for elementary and middle school student who identify as transgender.

Scarlett Johnson (@scarlett4kids), X (July 18, 2023, 3:09 PM), https://twitter.com/scarlett4kids/status/1681380803920396288 [https://perma.cc/6MS4-9AM9].

57.     Also on July 18, 2023, a conservative Wisconsin talk radio program, "The Dan O'Donnell Show," focused that day's episode to "break[ing] a big story about what parents say is a secret Elkhorn Area School District policy under which teachers and administrators can wait weeks to inform parents that their child is identifying as a different gender at school." The show's host, Dan O'Donnell, shared "an exclusive story from the Elkhorn School District where parents and school board members alike are shocked and frankly outraged that an incredibly detailed student gender identity policy has essentially been kept from them." During the episode, O'Donnell shared that parents and "at least two school board members" in Elkhorn objected to EASD's longstanding Gender Support Protocol.

### *School Board Meeting on July 24, 2023*

58.     The next regular Board meeting, on July 24, 2023, was attended by over 100 parents and community members (at least a ten-fold increase from the meeting the week before), many to voice opposition to transgender students' rights in EASD schools.

59.     At the beginning of the July 24 meeting, Defendant Tadlock took the podium and gave a roughly 25-minute speech to "clarify" EASD's gender support policies and protocols.

60.     Defendant Tadlock explained that EASD was "bound" to follow the Seventh Circuit's *Whitaker* decision, but then admitted that EASD was not, in fact, doing so. He assured the Board and meeting attendees that EASD did not permit *any* of its transgender students to use restrooms corresponding to their gender identity and would never require *any* student to use a restroom with a transgender student. In his accompanying PowerPoint presentation, Defendant Tadlock shared the following "Basic Facts" about EASD's implementation of its gender support protocols:

- "We currently have 22 students with support plans in place approximately .06 of 1% of our population. This is significantly less than the national average."

- "*No student* currently has usage of the restroom or locker room with which gender they identify as a part of their current support plan."

- "*No student* will *ever* be required to use a restroom with an individual of the opposite biological sex."

Jason Tadlock, Elkhorn Area Sch. Dist., Transgender Support Plan Clarification 07.24.23 (July 24, 2023) (emphases added).

61.     In his spoken remarks, Defendant Tadlock elaborated, stating that all transgender students currently under Gender Support Plans are using gender-neutral, single-occupancy restrooms, "or the restrooms aligned with their biological sex." He added:

> No student will ever be required, and I think this is the elephant in the room, people want to know, I completely understand this, I have a teenage daughter, I have young adolescent boys at school, you know, will my student be required to use a restroom or use a locker room with someone of the opposite biological sex? No student will ever be required to do that.

62.     Following Defendant Tadlock's lengthy remarks, the Board heard public comment from many meeting attendees, a number of whom made overtly transphobic and discriminatory comments in expressing their opposition to EASD's policies and protocols regarding transgender students.

63.     One member of the public complained that EASD is "confus[ing] young students" and "normalizing something that is a psychological issue." A third demanded that EASD provide separate bathrooms for transgender students immediately, repeating the debunked myth that another Wisconsin school district had "litter boxes in the bathrooms" and lets students "identify as a cat or a dog," and concluding that "society's going to go straight to hell." Yet another said he was "very upset" with the EASD administrators who developed the Gender Support Protocols, stated

that "everybody failed, in my eyes, on how this was implemented," and queried whether "my 8-year-old daughter who loves softball will not have a spot on the team because there's going to be 12 other guys that suck at baseball . . . switching to softball."

64.     Several Board members expressed agreement with this community opposition. School Board member Devin Gatton stated, "I am also a parent, and I am a parent currently of about 11 children, and there comes a point where I need to be able to protect all of my children, and that includes my daughter, that includes my sons, and if that means that the district has to go through and review the gender support plan and review our spots that are currently in place, then that is something that I will peruse."

65.     Board member Ed Scaro then requested that the School Board and EASD administration revise EASD's bathroom and locker room policies. Defendant Tadlock scheduled a closed session meeting for August 14, 2023, with the School Board's attorney, to discuss "potential revisions" to EASD's bathroom and locker room policy.

### School Board Meeting on August 14, 2023

66.     At its meeting on August 14, 2023, the Board again heard multiple public comments criticizing EASD's transgender student policies.

67.     After the public session of the August 14 meeting, the Board convened a closed session "to consider and discuss policies and procedures related to gender nonconforming students, which if discussed in open session would harm the reputation of individuals discussed and require disclosure of confidential student information, and to confer with legal counsel regarding strategy with respect to potential litigation regarding the same." Elkhorn Area Board of Educ., Regular Meeting of the School Board, Meeting Minutes (Aug. 14, 2023).

**IN OCTOBER 2023, EASD FORMALLY CHANGED ITS POLICIES FOR TRANSGENDER STUDENTS' SCHOOL FACILITY USE IN RESPONSE TO DISCRIMINATORY PUBLIC PRESSURE.**

68.     Two weeks before the School Board's August 14 meeting, the Seventh Circuit issued its decision in *Martinsville*, affirming preliminary injunctions barring several Indiana school districts from denying transgender students access both to sex-specific restrooms *and* locker rooms corresponding to their gender identity (which the decision describes as "gender-affirming facilities"). 75 F.4th 760. The Seventh Circuit reaffirmed its prior holding in *Whitaker* that denying transgender students access to gender-affirming facilities violated their rights under Title IX and the Equal Protection Clause because the defendant school districts "persisted in treating the three plaintiffs," all transgender boys, "worse than other boys because of their transgender status." *Id.* at 772. The Seventh Circuit further held *Whitaker*'s holding was strengthened by the Supreme Court's intervening decision in *Bostock*, concluding that "discrimination against transgender persons is sex discrimination for Title IX purposes, just as it is for Title VII purposes." *Id.* at 769.[1]

69.     Despite this additional controlling legal authority, EASD chose to weaken its policies regarding transgender students' restroom use, in direct response to and tacit endorsement of the biased community pressure to do so in the preceding months.

70.     In October 2023, EASD issued a revised version of its Gender Support Protocols document. The revised language reads as follows:

---

[1] The Supreme Court subsequently denied the defendant school districts' petition for certiorari in *Martinsville*, 75 F.4th 760, leaving *Martinsville* and *Whitaker* in place as the controlling case law in the Seventh Circuit.

**District Facility Use:**
As we complete the gender support plan, we should always ask the student their preference for locker room and bathroom use and not assume they want to use the facilities consistent with their gender preference or sex. We also must be careful not to put any unreasonable restrictions on the use of the facilities. While the District cannot require a transgender student to use gender-neutral bathrooms, when possible the District should have a gender-neutral location that can be used by anyone. For locker rooms, a plan will be developed for each student on a case-by-case basis to meet their needs and the needs of other students.

Gender Support Protocols (2023) at 4.

71.     This revised paragraph differed in material respects from the previous 2021 version, including by (a) deleting the previous language "that refusing to allow a student access to and use of facilities consistent with their gender identity may be a violation of Title IX," and (b) replacing the previous commitment to providing transgender students' access to *all* facilities (including restrooms and locker rooms) with a new, more discriminatory policy that, "[f]or locker rooms, a plan will be developed for each student on a case-by-case basis to meet their needs and the needs of other students." The textual revisions between the 2021 and 2023 version are illustrated in red text here (with new text underlined and deleted text in strikeout):

**District Facility Use:**
As we complete the gender support plan, we should always ask the student their preference for locker room and bathroom use and not assume they want to use the facilities consistent with their gender preference or sex. We also ~~have to~~ <u>must</u> be careful not to put any <u>unreasonable</u> restrictions on the use of the facilities. While the District cannot require a transgender student to use gender-neutral ~~facilities~~ <u>bathrooms,</u> when possible the District should have a gender-neutral location that can be used by anyone. <u>For locker rooms, a plan will be developed for each student on a case-by-case basis to meet their needs and the needs of other students.</u> ~~Please note that refusing to allow a student access to and use of facilities consistent with their gender identity may be a violation of Title IX.~~

72.     As described below, under both its previous and revised policies and practices, EASD denied and continues to deny Plaintiff Jane Doe, and all other transgender students in EASD

schools, access to sex-specific facilities matching their gender identity, in blatant and conscious disregard of the law.

### EASD Has Denied Plaintiff Jane Doe Her Right to Use Girls' Facilities at School Since Fall 2022.

#### *2022-2023 School Year*

73. After starting middle school at EAMS as a sixth grader in the fall of 2022, Plaintiff Jane Doe began to take steps to live consistently with her female gender identity. At school, she took steps to begin living as a girl, including carrying a purse, growing out her hair, wearing traditionally feminine colors and clothing, and occasionally using the girls' restroom.

74. Jane participates in several school activities. In November 2022, Jane asked a trusted teacher to refer to her using her chosen name, Jane, rather than her traditionally male given name. The teacher responded that Jane would need to develop a Gender Support Plan with her guidance counselor before the school would use her chosen name.

75. Shortly thereafter, Jane's guidance counselor, Todd Ghilani, reached out to Jane to schedule a meeting to discuss her request to use a different name. During that meeting, Jane told Mr. Ghilani that she is transgender.

76. On November 11, 2022, after he met with Jane, Mr. Ghilani called Jane's parents, Mr. and Mrs. Doe, to inform them that Jane had come out to him as transgender. During the call, he asked the Does to come into the guidance office that same day to create a Gender Support Plan for Jane. The Does came to EAMS to meet with him that same day.

77. At the meeting, Mr. Ghilani walked through EASD's Gender Support Plan form, a four-page form addressing topics including parent involvement, confidentiality and privacy issues, student records, name and pronoun usage by staff and students, student safety, use of restrooms

and locker rooms, participation in extracurricular sports and activities, and other information related to the student's gender transition.

78.     During the meeting, Mr. Ghilani asked Jane and her parents to confirm information already discussed with Jane during his prior meeting with her, and to fill in other sections of the plan. The completed form contained Jane's chosen name, the female pronouns she uses (she, her, and hers), the family's preferences for protecting Jane's confidentiality, what she can do when she feels unsafe, and which employee would be her "Key Safe Adult." Each of these sections were completed based on Jane's preferences and her parents' agreement.

79.     The Gender Support Plan form also contained a section on "Facilities" usage at school and on school trips. Unlike the other sections—which Mr. Ghilani completed based on information provided by Jane and her family—Mr. Ghilani completed the Facilities section of the form prior to the meeting and without the Does' input.

80.     In a subsection of the Facilities section labeled "Restrooms and Locker Rooms," Mr. Ghilani completed the following (completed entries indicated in italics), indicating that Jane would be required to use the single-occupancy faculty restrooms in the main office both as a restroom and to change her clothes for her sixth-grade physical education class:

- "Student will use the following restroom(s) on school grounds: *Faculty*"

- "Student will change clothes in the following place(s): *Faculty*"

- "Contact person for questions/concerns about facilities: *Ghilani*"

81.     In another subsection of the Facilities section labeled "Field Trips," Mr. Ghilani completed the following:

- "Use of facilities for any class trips: *Female*"

82.     Mr. Ghilani did not offer Jane or her parents the option to choose girls' facilities at school during this meeting.

83.     Although Jane wanted to use girls' facilities like every other girl, neither she nor her parents knew at the time that she could assert her right to do so.

84.     EAMS is a two-story building. Both floors have classrooms. The first floor also has the main office, the cafeteria, the gym, and locker rooms.

85.     The two faculty restrooms that Jane was authorized to use in sixth grade are in the main office on the first floor. Those restrooms were located further away from all of her sixth-grade classes than the girls' restrooms and locker rooms other girls could use.

86.     Jane was not allowed to change in the girls' locker room for her physical education ("PE") class. Under her Gender Support Plan, she was forced to change before and after class in one of the faculty restrooms, which were further away from the school gym than the locker rooms used by other students. As a result, Jane was forced to arrive late to, and leave early from, PE class to give her time to travel to the main office faculty restroom to change. This caused her to lose significant PE class time.

87.     Through the remainder of the 2022-2023 school year, Jane felt increasing anxiety, embarrassment, and isolation from being restricted to faculty restrooms and being treated differently than her peers. She became so distressed that, toward the end of the 2022-2023 school year, she started to miss a significant amount of class time and stay home sick from school, resulting in two warning letters from the school about her absences.

88.     On one occasion in sixth grade, Jane felt ill and ran to the nearest restroom available to her in the main office, passing girls' restrooms along the way while trying not to become sick in the hallway. This incident caused her further distress and embarrassment.

89.    To try to fit in with other girls and avoid the distress and humiliation of having to use the faculty restrooms, Jane occasionally used girls' restrooms at school in the spring of 2023.

90.    After using the girls' restroom on one occasion, Jane was repeatedly scolded and threatened with discipline by three separate EAMS faculty members. Her PE teacher saw her use the girls' restroom and pulled her aside to "remind" her that she was prohibited from using the girls' restrooms. Shortly thereafter, Mr. Ghilani, her guidance counselor, pulled Jane out of class to reprimand her for a second time for this same incident. Later, Associate Principal Jessica Rima pulled Jane out of class *again* to chastise her for her using the girls' bathrooms and threaten her with discipline if she did so again. Jane was upset that she was being reprimanded a third time for the same incident of using a girls' restroom. Jane felt embarrassed, singled out, and fearful of being further disciplined after being pulled aside or out of class on each of these three occasions.

***2023-2024 School Year***

91.    Before Jane started seventh grade in early September 2023, she and her parents agreed that she should use girls' restrooms at EAMS when she returned to school for the new school year.

92.    On August 29, 2023, about a week before the first day of school, Jane and Mr. Doe attended the EAMS open house, an event that allows students and parents to see classmates, meet teachers, and get ready for the new school year.

93.    At the open house, Associate Principal Rima approached Jane and Mr. Doe. She asked them to come to the principal's office to meet with the EAMS Principal, Defendant Ryan McBurney. The Does complied with the request.

94.    At the meeting, Defendant McBurney told the Does that a parent had complained about Jane's use of the girls' restrooms the previous school year. In response, Jane disclosed that

she had used girls' restrooms sometimes. Defendant McBurney then reprimanded Jane for using girls' restroom, telling her it violated her Gender Support Plan.

95.     Mr. Doe, who had never met Defendant McBurney, was shocked that the principal was confronting his child about her restroom use and told him to stop. Mr. Doe told Defendant McBurney that the Does would authorize Jane's use of the girls' facilities going forward, advised him that Jane was legally entitled to use those facilities, and requested that Jane's Gender Support Plan be amended to allow her to use girls' facilities.

96.     Defendant McBurney immediately and summarily rejected Mr. Doe's request. Defendant McBurney referenced the community opposition to transgender students' rights, asking Mr. Doe if he "was aware of his surroundings," or words to that effect. Defendant McBurney then stated that "this is an unfortunate situation for the school," or words to that effect, and refused to reconsider any changes to Jane's Gender Support Plan. Mr. Doe requested that Defendant McBurney escalate the request to the Superintendent, Defendant Tadlock.

97.     The next day, August 30, 2023, Defendant McBurney called Mr. Doe to inform him that he had spoken with Defendant Tadlock and that Jane's requested use of girls' restrooms "was not going to happen," or words to that effect, making clear that EASD would not permit Jane to use girls' restrooms under any circumstance. Mr. Doe then requested a meeting with both Defendants McBurney and Tadlock to discuss the issue further.

98.     On August 31, 2023, Mr. and Mrs. Doe met with Defendants Tadlock and McBurney. The two administrators again refused to change Jane's Gender Support Plan to provide her access to or use of girls' facilities at EAMS. Defendant Tadlock told the Does that EASD policy prevented him from authorizing Jane to use girls' restrooms at school.

99.     At the August 31 meeting, Defendants Tadlock and McBurney unilaterally altered the Gender Support Plan to allow her to use three single-occupancy, gender-neutral restrooms at EAMS, in addition to the faculty restrooms she was already authorized to use. All of these bathrooms are further away from Jane's classes than girls' restrooms that other girls can use.

100.     During the August 31 meeting and in subsequent email communications, Mr. Doe advised Defendants Tadlock and McBurney that their refusal to provide Jane access to girls' restrooms violated her rights under federal law.

101.     To date, Defendants have continuously denied Jane access to girls' restrooms, exposing her to ongoing unwanted attention by classmates and teachers, stigma, heightened anxiety and distress, bullying and harassment by peers, and social and academic withdrawal.

102.     The segregation of Jane from other female students causes her not only stigmatic and psychological harm, but also forces her to spend more time and energy getting to the restrooms than her peers. Whereas other girls at EAMS have access to ten restrooms (five girls' and five unisex), Jane only has access to five gender-neutral restrooms. These include the faculty restrooms, which other students do not typically use, the nurse's office restroom near the main office, and the restroom in the science lab, which can only be accessed through a classroom that often has students in it.

103.     All of the options call attention to Jane and require her to travel further than her classmates to use the bathroom.

104.     Jane has consciously restricted her water intake to avoid using the restrooms at school and be late to her classes, feel ostracized and stigmatized, and risk having an accident walking to restrooms that are too far away. Jane has experienced extreme discomfort and adverse health effects, including dehydration, because of her reduced water intake.

105.     Jane has also been singled out by EAMS administrators for harsher scrutiny and discipline. Associate Principal Rima, who reprimanded Jane last year for her use of girls' restrooms, has continued to express hostility toward Jane and monitor Jane's restroom use this year. Ms. Rima was also Jane's teacher in a class called AVID, a college and career readiness class. Jane experienced significant discomfort around Ms. Rima, causing her to miss class, struggle with assignments, and ultimately drop the class altogether.

106.     Similar to the incident in sixth grade, Jane experienced nausea one day in December 2023, and she nearly vomited on the floor trying to get to one of the restrooms she was allowed to use.

107.     Jane has stayed home sick over 30 times this year—a dramatic increase from previous years—both because of the adverse physical and mental health effects caused by the discrimination she is facing, and to avoid the severe distress about going to school under these circumstances.

**INJURIES TO PLAINTIFF**

108.     By denying Plaintiff Jane Doe access to girls' restrooms, requiring her to use separate, gender-neutral bathrooms, and implementing and enforcing school- and district-level policies, practices, procedures, and customs that categorically deny Jane and all other transgender students their right to use sex-specific school facilities corresponding to their gender identity, Defendants have injured and are continuing to injure Jane.

109.     Defendants, through their actions described herein, have denied Jane full and equal access to EASD's education programs and activities by denying her the full and equal access to sex-specific school facilities offered to other girls, and requiring her to use several single-

occupancy, gender-neutral facilities that expose her to unwanted scrutiny, stigma, and lost class time.

110.    As a direct and proximate result of Defendants' unlawful actions, Jane has experienced and continues to experience the harmful effects of being segregated from, and treated differently than, her female classmates at school, including extreme emotional distress, embarrassment, social isolation, stigma, and heightened symptoms of gender dysphoria.

111.    Defendants' discriminatory actions have caused Plaintiff to lose educational opportunities, including lost class time and missed school due to the adverse physical and emotional health effects related to her inability to use girls' restrooms at school.

112.    Defendants' discriminatory actions, and the efforts Plaintiff has made to comply with the directive not to use girls' restrooms, including limiting her water intake, have led to a host of physical health issues.

113.    Defendants' conduct described in this Complaint was willful, intentional, and knowing, and was implemented with callous and reckless disregard for Plaintiff's rights and the rights of other transgender students under the law.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.***
***Against Defendant Elkhorn Area School District***

114.    Plaintiff repeats and incorporates by reference all of the allegations set forth above.

115.    Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

27

116. The prohibition on discrimination "on the basis of sex" contained in Title IX includes discrimination against an individual for being transgender and for nonconformity to sex- or gender-based stereotypes.

117. As a recipient of Federal funds, EASD is subject to Title IX's prohibitions on discrimination on the basis of sex in its education programs and activities.

118. EASD, by forbidding Plaintiff from using female-designated restrooms at school, requiring that she use faculty or single-occupancy restrooms, invasively monitoring her restroom usage, disciplining and threatening her with discipline for using girls' restrooms, and treating Plaintiff differently from other female students because she is transgender, has denied Plaintiff the benefits of, and subjected Plaintiff to discrimination under, EASD's education programs and activities, in violation of Title IX.

119. Plaintiff has been, and continues to be, injured by EASD's discriminatory conduct, and has suffered damages as a result.

120. EASD's discriminatory conduct complained of herein was, and continues to be, intentional, willful, and made in reckless disregard of the known rights of others.

SECOND CAUSE OF ACTION

**Violation of 42 U.S.C. § 1983 Based on Deprivation of Plaintiff's Rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution** *Against All Defendants*

121. Plaintiff repeats and incorporates by reference all of the allegations set forth above.

122. Defendants' policies, practices, procedures, and customs that categorically deny transgender students access to sex-specific school facilities corresponding to their gender identity, and requiring all transgender students to either use sex-specific facilities conflicting with their gender identity or single-occupancy, gender-neutral facilities, both facially and as applied to

Plaintiff Jane Doe, violate the Equal Protection Clause of the Fourteenth Amendment by subjecting Jane and other transgender students to discrimination on the basis of sex and transgender status.

123.    Defendants' adoption, implementation, enforcement, and failure to intervene in policies, practices, procedures, and customs that categorically deny transgender students access to sex-specific school facilities corresponding to their gender identity, and requiring all transgender students to either use sex-specific facilities conflicting with their gender identity or single-occupancy, gender-neutral facilities, are not substantially related to any important governmental interest or rationally related to any legitimate governmental interest.

124.    Defendants are liable for violating Jane's Fourteenth Amendment rights under 42 U.S.C. § 1983.

125.    Jane has been, and continues to be, injured by Defendants' discriminatory conduct and has suffered damages as a result.

126.    Defendants' discriminatory conduct complained of herein was, and continues to be, intentional, willful, and made in reckless disregard of the known rights of others.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Jane Doe, by and through her parents and next friends, John Doe and Jill Doe, respectfully requests that this Court:

(a)    enter a declaratory judgment that EASD's discriminatory conduct, policies, practices, procedures, and customs complained of herein violate Plaintiff's rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and that those policies, practices, procedures, and customs also deprive Plaintiff and other transgender students of their rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to attend school free of discrimination based on sex and transgender status;

(d)     issue preliminary and permanent injunctions restraining Defendants their agents, employees, representatives, and successors, and any other person acting directly or indirectly with them, from adopting, implementing, or enforcing all school- or district-level policies, practices, protocols, and customs that deny Plaintiff and other transgender students the use of sex-specific school facilities consistent with their gender identity;

(e)     order all compensatory, injunctive, and equitable relief necessary to cure the adverse educational effects of Defendants' discriminatory actions on Plaintiff's education;

(f)     award compensatory damages in an amount that would fully compensate Plaintiff for the emotional distress, lost educational opportunities, pain and suffering, economic losses, and other injuries that have been caused by Defendants' conduct;

(g)     award punitive damages in an amount that would deter Defendants from engaging in future conduct that would deprive Plaintiff and other transgender students of their constitutional and civil rights;

(h)     award Plaintiff her reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

(i)     order such other relief as this Court deems just and equitable.

## JURY DEMAND

Under Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues in this case.

DATED: March 21, 2024                    Respectfully submitted,

/s/ Joseph J. Wardenski
Joseph J. Wardenski
WARDENSKI P.C.
134 West 29th Street, Suite 709
New York, NY 10001
Phone: (347) 913-3311
joe@wardenskilaw.com

Robert (Rock) Theine Pledl
Victoria Davis-Dávila
DAVIS & PLEDL, S.C.
1661 N. Water Street, Suite 410
Milwaukee, WI 53202
Phone: (414) 667-0390
rtp@davisandpledl.com
vldd@davisandpledl.com

*Attorneys for Plaintiff*